JAMES A. SIMMONS

*v.*

LIMA OIL COMPANY et al.

[Decided February 24th, 1906.]

1. Under a contract whereby complainant was to receive one-third of the profits that came to a firm from a mining venture, a bill to compel a corporation, to which the firm transferred its interest, subject to the rights of the complainant, to transfer to him one-third of the interest received by it from the firm, was insufficient where it failed to show that the venture had resulted in a profit, or that it had been completed.

2. A bill to compel an accounting by a joint adventurer with the complainant, under a contract by which the complainant was to receive one-third of the profit of the adventure, must show that the joint venture had reached determination and profit had been made, or that the venture had reached a point where the defendant had been reimbursed its outlay, so that a profit was being currently made, or that defendant was misconducting itself with respect to the business and could be held to have legally perpetrated a fraud on complainant.

3. Where, on a joint venture by complainant and a firm, stock in certain corporations was acquired, and complainant became a general manager thereof, where the firm transfers its interest in the corporations to another corporation, the fact that the latter so voted the stock as to eliminate the complainant as director and general manager of the original corporations, is not such misconduct as entitles the complainant to an accounting.

---

On demurrer to bill of complaint. Heard on bill and demurrer.

This is a bill filed by James A. Simmons against the Lima Oil Company and David J. Kelly, its president.

Briefly stated, the bill charges that Brown & Wells, who had interests in oil lands in Indian territory, agreed with Simmons to give him one-third of all the profits in cash and in stock that came to Brown & Wells for his co-operation in financing and managing the interests in the oil properties above mentioned. That Brown & Wells, in furtherance of the plans for the development of the oil lands controlled by them, caused to be incorporated, under the laws of New York, a corporation known as the New York and Osage Oil Company, and further caused to be incorporated, under the laws of South Dakota, a corporation called the Reservation Oil Company, and that to these two companies, respectively, there was conveyed by Brown & Wells all of their interests in the oil lands alluded to, and as part of the consideration for said conveyances Brown & Wells received $700,000 of the capital stock of each of the two companies above named. It appears that some part of each of these two blocks of stock was to be returned to the companies for sale to furnish working capital, but how much is not shown.

The bill further charges that subsequently the Lima Oil Company was incorporated in the State of New Jersey, and

"negotiations were had between the said Brown & Wells and the Lima Oil Company looking to the taking over, directly or indirectly, by said company of the said New York and Osage Oil Company, and the Reservation Oil Company, or the capital stocks thereof, by said Lima Oil Company, and the continuation of the said enterprise in which Brown & Wells and your orator and said corporations had been theretofore engaged by said Lima Oil Company and under its direction and control."

On the 29th of June, 1904, the complainant wrote a letter to Brown & Wells, which they transmitted to the Lima Oil Company, in which he said:

"Referring to the agreement which I have with your firm concerning the profits * * * in connection with the New York and Osage and the Reservation Oil companies operating in the Osage reservation, I would say that I am willing that the Lima Oil Company, or any other responsible company or individual, may be substituted for Brown &

Wells to carry out the terms of our agreement, so long as my interests in the two companies are in no way affected as to the division of profits, * * * as called for in our agreement."

In transmitting this letter to the Lima Oil Company, Brown & Wells agreed to dispose of all their interests in the corporations named,

"on the understanding that you will take our place in the transaction and will carry out all of our obligations in guaranteeing the return of money for sale of stock, also the contract with Mr. Simmons and others, of all which you have knowledge."

In transmitting the stock to the Lima Oil Company, Brown & Wells state, in the letters accompanying the same, that it is turned over "subject to the claims of Mr. Simmons," and "with the understanding that you will protect the interests of Mr. Simmons in the remainder."

The complainant subsequently demanded of the Lima Oil Company that it transfer to him the one-third of the $700,000 of stock of each of the two companies, namely, the New York and Osage company and the Reservation company.

The prayer is for an injunction preventing the Lima Oil Company from transferring or in any way disposing of the $700,000 of the capital stock of each of the two companies just named "until they shall have assigned, transferred and set over unto your orator the one-third portion" thereof, and that the said defendant "be further decreed to account to your orator for any and all profits derived by them during their holding of the aforesaid capital stocks of the said two corporations."

To this bill the defendant, the Lima Oil Company, filed a demurrer.

*Messrs. Northrop & Griffiths,* for the complainant.

*Mr. Gilbert Collins* (with whom was *Mr. Julian C. Harrison,* of the New York bar), for the defendant Lima Oil Company.

GARRISON, V. C. (after stating facts).

The complainant must charge in his bill all those facts which are essential to entitle him to relief, and such charges must be

certain, clear and positive. *Brokaw* v. *Brokaw's Executors, 41 N. J. Eq. (14 Stew.) 215 (Vice-Chancellor Van Fleet, 1886).*

Although the bill in this suit is not so drawn as to make it clearly appear, I think it fairly inferable from the charges in the bill that the complainant seeks relief upon one of two theories:

I. One claim to relief would seem to be that because of his contract with Brown & Wells, and the facts attending the carrying out thereof, he became entitled to one-third of the capital stock of the New York company and of the Reservation company issued to Brown & Wells, and has the right to demand and receive such one-third of such stock from the Lima Oil Company, the defendant, to which company Brown & Wells transferred the stocks of the New York and Reservation companies, subject to complainant's rights.

II. The second theory is that complainant and Brown & Wells were engaged in a joint venture in the exploitation of these oil properties owned by Brown & Wells, for assisting in the financing and managing of which complainant was to receive one-third of any profit accruing therefrom; that at a certain stage in the carrying out of this undertaking Brown & Wells, with the concurrence of the complainant, retired from the joint venture, and the Lima Oil Company became substituted in their place; that the complainant thereafter continued as a joint adventurer, with respect to this subject-matter, with the Lima Oil Company, and as such is entitled to call that company to account for his interest therein.

It becomes necessary to examine the charges of the bill to determine whether essential facts appear to support either of these two theories.

I. By virtue of the agreement between the complainant and Brown & Wells he became entitled to one-third of any profit in cash and in stock that came to Brown & Wells in this matter. If the complainant shows that the joint venture, as carried on by him and Brown & Wells, had resulted in a profit, and that the Lima Oil Company took over the assets of the joint venture subject to complainant's rights therein, he undoubtedly

would be entitled to demand and receive from the Lima Oil Company one-third of any such profit.

The bill, however, does not charge that the joint venture, at the time that Brown & Wells retired therefrom, had resulted in a profit. It appears from the bill that Brown & Wells purchased certain interests in oil lands, but at what price is not stated; that thereafter they incorporated the New York company and the Reservation company; that they received certain moneys from purchasers of the stock of these two companies, but were under obligation to these purchasers to return their money to them under certain undisclosed conditions. From these two companies Brown & Wells received seven thousand shares of stock, respectively, for the transfer of their oil interests to said companies, but it also appears that they were not to retain for their own use these fourteen thousand shares of stock, since it was understood that a large proportion of these shares was to be returned to the treasury of each company for sale for the company's benefit.

It may also be gathered from the bill that each of these companies was actively engaged in producing oil, which necessarily implies the use of machinery and equipment, but it does not appear from what source the money to purchase the same came.

At the time that Brown & Wells retired from the joint venture they received from the Lima Oil Company $6,000, or security for the payment to them of $6,000, together with one thousand shares of stock of each of the two before-mentioned companies. For lack of proper data it is utterly impossible to determine whether at that stage of the transaction Brown & Wells had profited or had lost by the venture. The Lima Oil Company is shown to have either paid $6,000, or obligated itself so to do, and to have received six thousand shares of stock of each of the two companies formed by Brown & Wells. It also assumed the obligation of Brown & Wells to return to purchasers of stock of the two underlying companies their purchase-money under undisclosed conditions. Here, likewise, it is impossible, for lack of facts, to determine whether, thus far, the Lima Oil Company has made a profit or suffered a loss.

The complainant in his bill charges that he

"* * * under his contract with Brown & Wells, herein set forth, was entitled at any and all times to demand, ask for and receive a transfer of one-third thereof [all the stock received by Brown & Wells from the two underlying companies] for his own use and benefit."

This, obviously, is a conclusion of law by the pleader, and is an incorrect conclusion, because, by the terms of the contract, he was only entitled to one-third of any profit, and was not entitled to one-third of any gross amount received by Brown & Wells.

Furthermore, it does not appear from any charges in the bill that this joint venture had reached a completion at the time of the retirement of Brown & Wells therefrom, and if it had not, then, of course, the complainant was not entitled to the transfer of any of the capital of the joint venture, but only to one-third of any current profits.

So far from the facts alleged in the bill showing a completed undertaking at the time mentioned, I think it quite clearly appears that the contrary was the case, and that the undertaking originally begun by Brown & Wells and the complainant was intended to be carried on by the Lima Oil Company and the complainant. If this latter view of the facts is the correct one—and I shall deal with it more at length under the next head—then, of course, the complainant is not entitled to do more than call for an accounting with respect to current profits to which he may be entitled.

For these reasons, I find that the bill cannot be sustained upon the first theory suggested above.

II. The other theory available to the complainant is that the Lima Oil Company, having taken Brown & Wells' place in the joint venture, is accountable to the complainant, as Brown & Wells would have been had they remained in their original position.

I think the facts charged bear out the theory that there was not a winding up and disposition of the joint assets to the Lima Oil Company, but a substitution of that company in the place of Brown & Wells in the original undertaking. The complainant, in a letter to Brown & Wells, dated June 29th, 1904, says:

"I am willing that the Lima Oil Company * * * may be substituted for Brown & Wells to carry out the terms of our agreement, so long as my interests in the two companies are in no way affected as to the division of profits, * * * as called for in our agreement."

A copy of this letter is contained in a letter written by Brown & Wells to the Lima Oil Company, in the course of which they say:

"We will dispose of all our interest in the New York and Osage Oil Company, and the Reservation company, on the understanding that you will take our place in the transaction and will carry out all of our obligations in guaranteeing return of money for sale of stock, also the contract with Mr. Simmons and others, of all which you have knowledge."

That the complainant understood that this was the effect of the transaction is apparent from the charge in his bill that the purpose of the negotiations between Brown & Wells and the Lima Oil Company was to provide for

"the continuation of the said enterprise in which Brown & Wells and your orator and said corporations had been theretofore engaged, by said Lima Oil Company, and under its direction and control."

The bill further sets forth that after the retirement of Brown & Wells the complainant continued to co-operate in the management of the enterprise as a director and general manager of each of the underlying companies.

The legal effect of the facts charged is that the complainant and the Lima Oil Company are joint adventurers with respect to this enterprise.

Since it is not shown that the complainant has contributed any money whatever, or has any interest in the capital employed, his rights are solely those of a joint adventurer in the profits arising out of the exploitation of the properties of the other parties. His rights with respect to this matter would appear to be any one of three things, dependent upon conditions:

If the joint venture had reached a termination and a profit had been made, he would be entitled to one-third of the profit; if the joint venture had reached a point where the other parties who put in the money had been reimbursed their outlay,

so that a profit was being currently made, he would be entitled at reasonable times (since there is no specified time in the contract) to his one-third of the current profit; if neither of these two contingencies had happened, but the other party was misconducting himself with respect to this business, and could be held to be legally perpetrating a fraud upon the complainant, the latter would have a right to have the court intervene and wind up the business, and if a profit resulted therefrom decree the complainant's share thereof.

A careful analysis of the bill does not disclose any allegations sufficient to sustain complainant's right to relief under any one of the three contingencies stated. As has been before pointed out, there is nothing in the bill to show that the joint venture has been completed, and, in fact, every charge in the bill seems to refute such a conclusion. There are no facts charged in the bill from which it may be properly inferred that those who put the money into this business have been repaid, so that the business is now earning a profit. There is the following charge in the bill:

"That the said corporations [the New York company and the Reservation company] were being profitably managed and conducted, and producing oil in good quantities, and developing their plants and properties in a manner to greatly enhance the value of their capital stock and to the profit and benefit of their stockholders."

But this does not cast any light upon the essential inquiry as to whether those who financed the enterprise—namely, in the first place, Brown & Wells, and afterwards the Lima Oil Company—had been repaid or had been secured for their investment, so that what is now being made is a profit.

It is very often the case that a concern is making more money than it is expending, and so, considering income and outgo, is profitable; but it would not be proper to therefore determine that to those who originally financed it a profit had necessarily accrued, because unless enough profit on operation has been made to repay the original investment no profit in this sense of the word has accrued upon the investment.

In default of charges of fact, it cannot be learned from this

bill whether the Lima Oil Company has received from this enterprise more than it has paid or obligated itself to pay with respect thereto. It appears from the bill that it has paid or obligated itself to pay $6,000 in cash and some sums of money, amount not disclosed, to stockholders upon certain conditions which are undisclosed. It certainly cannot, therefore, be said that there is any charge in this bill to sustain a finding that there is any current profit in the joint venture for which the complainant is entitled to call the defendant to account.

The third contingency suggested as one entitling the complainant to relief, if the facts justify it, was that the joint adventurer with the complainant was so conducting the business as to deprive the complainant of some rights, or endanger his rights therein, or defraud him with respect thereto. I do not find any charges in the bill sufficient to sustain the complainant's right to relief upon this contingency. He does not charge that the defendant is mismanaging the enterprise, or is doing any act in fraud of the complainant. He does not even charge that he has been prevented from obtaining full information concerning the financial conditions surrounding this operation. He does charge that shortly before the filing of the bill the defendant so voted the stock of the two underlying companies as to eliminate the complainant as director and general manager thereof. While the complainant, by reason of his contract, was under obligation to co-operate in the management, I do not think that the defendant is bound to avail itself of complainant's services if it does not see fit to do so. All that the complainant may insist upon is that the enterprise be honestly and properly managed and conducted by its owner, the defendant. The complainant, as has heretofore been pointed out, was not an owner of any part of the assets of this enterprise; he was merely entitled, in consideration of co-operation, to a share of the profits.

While, as I have before suggested, I think the court would intervene on behalf of this complainant if he showed that the defendant had excluded him from the management and was so managing the property as to defraud the complainant of his rights, it should not interfere unless facts are charged which

clearly make it appear that this is the case. I find no such facts charged in this bill.

If the complainant has not shown that the enterprise has reached completion at a profit, or is being currently operated at a profit, or is being managed in fraud of his rights, I do not think he has made out a case entitling him to the relief of account.

The general principles applicable will be found in the case of *Warwick* v. *Stockton,* 55 *N. J. Eq. (10 Dick.)* 61, which is dissimilar with respect to the matter of accounting, because the contract in that case provided for accounts at stated intervals.

Since I do not find that this bill sufficiently states any facts entitling complainant to relief in equity, the demurrer must be sustained, and I will so advise.